SEGUNDO TAMARGO and Others, Copartners Doing Business under the Firm Name of TAMARGO & Co., Respondents, *v.* S. SILBERSTEIN & SONS, INC., Appellant.

First Department, April 21, 1922.

Sales — action to recover deposit made on contract by buyer on ground that seller failed to deliver according to contract — evidence — much conflicting testimony — error to exclude letters of defendant tending to sustain its contention that goods had been delivered to packers to prepare for shipment in accordance with contract.

In an action to recover a deposit made by plaintiffs on a contract to purchase merchandise from defendant, to be delivered " F. A. S. Steamer, N. Y.," on the ground that defendant had failed to deliver the goods as provided in the contract, wherein defendant claimed that the goods had been delivered to a packer agreeable to the plaintiffs for preparation for shipment pursuant to the terms of the contract, it was reversible error, where there was much conflicting testimony, to exclude two letters written by defendant to plaintiffs and offered in evidence by defendant, one of which showed that defendant, before delivering the goods to the packer, notified plaintiffs thereof, and the other requested the name of the steamer and pier so that the packer might be informed as to where to deliver the goods, as the letters had an important bearing on the good faith of the defendant and upon the question of which party was in default.

APPEAL by the defendant, S. Silberstein & Sons, Inc., from a determination and order of the Appellate Term of the Supreme Court, First Judicial Department, entered in the office of the clerk of the county of New York on the 17th day of May, 1921, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Third District, in favor of the plaintiffs.

*Burnstine & Geist [Henry C. Burnstine* of counsel], for the appellant.

*Louis O. Bergh,* attorney for the respondents.

DOWLING, J.:

The complaint herein alleges that plaintiffs, a copartnership, on or about March 31, 1920, entered into an agreement with the defendant, a domestic corporation, whereby defendant should sell and deliver to plaintiffs and plaintiffs should purchase at New York city, 1,000 pieces of voile, fifty to sixty yards each, 500 pieces thereof to be delivered on or about May 1, 1920, and the remaining pieces a month later. It is alleged that at the time of the making of the said agreement the plaintiffs in accordance therewith deposited with the defendant the sum of $1,000, as part payment for the said merchandise and that they were ready and willing to take said goods as called for by the contract and pay for

same and duly performed all conditions on their part to be performed; that the defendant failed and refused to deliver the merchandise when required by the said agreement, and by reason of the premises plaintiffs are entitled to the return of the deposit of $1,000 with interest thereon as partial damages for the failure of the defendant to carry out said agreement. It is then alleged that defendant has refused to return the sum of $1,000 although repayment has been duly demanded by the plaintiffs. The answer admits that the defendant entered into an agreement with the plaintiffs and begs leave to refer to the original of the agreement as to the terms and conditions upon the trial of the action. It does not deny the making of the deposit in question, but denies the other allegations of the complaint. For a separate defense and by way of setoff the answer sets forth that the defendant duly and substantially performed all the terms and conditions of the agreement on its part to be performed, save and except as prevented therefrom by plaintiffs; that it has at all times been ready, able and willing to perform the conditions of the said agreement on its part to be performed and to make delivery of the goods, wares and merchandise mentioned and described therein. It is alleged that at the time said agreement was entered into plaintiffs requested defendant to cause said goods mentioned in the said agreement to be packed and prepared for shipment, as indicated in the agreement by packers known to plaintiffs and selected by them; that about May 1, 1920, defendant caused to be delivered to the packers selected by plaintiffs 1,000 pieces of thirty-nine-inch to forty-inch printed voile set forth in the agreement, with instructions to pack the same in accordance with the terms thereof; and defendant duly notified plaintiffs of the delivery of the said merchandise to the packers. Plaintiffs extended delivery of the merchandise in accordance with the terms of delivery specified in the agreement until the packing thereof was completed, which completion took place on or about June 6, 1920, and defendant duly notified plaintiffs thereof and requested them to furnish it with further specifications of delivery, but plaintiffs wholly failed, neglected and refused to furnish the same, whereupon defendant duly offered delivery of the said goods to plaintiffs, but plaintiffs wrongfully and in violation of the terms of the agreement failed, neglected and refused to accept the same and repudiated the agreement and stated that they would not perform the terms and conditions therein contained, by reason whereof defendant has been damaged in the sum of $16,500, no part whereof has been paid except the sum of $1,000.

Upon the trial the written agreement between the parties was received in evidence as follows:

" *Mar.* 31, 1920.

" EXPORT ORDER

" TAMARGO & CO., EXPORTERS

" 56 Worth St., N. Y.

" Order placed with S. Silberstein & Son.

" For account of Tamargo & Co.

" Address 59 Leonard St.

" Kindly enter the following order subject to the conditions stated below.          Yours very truly,

" TAMARGO & CO.

" Per (Sgd) HELM STRUCKMAN

" Terms: 2% ten days from date of invoice.  Delivery F. A. S. Steamer N. Y.

" One thousand pieces 39/40″ Printed Voile as per samples submitted at 50 cts. per yard.

" Assortment:

" Five styles, each style in five different colors, as per samples submitted.

" Packing:

" Pieces of about 50 to 60 yards, doubles and rolled, papered and cardboarded.  Cases of fifty pieces each, equally assorted, cases to be lined with waterproof paper, strong iron strapped for export. Folding charges, not to exceed Two hundred and fifty dollars, to be paid by purchasers.

" Delivery:  Five hundred pieces (One hundred each style) on about May 1st, 1920.  Five hundred pieces (One hundred each style) one month later.

" Samples:  Three yards of each pattern not later than April 1st, 1920.  Purchasers to pay the sum of One Thousand dollars ($1,000) as deposit and security, said sum to be applied as payment on account when invoice for last shipment is rendered.  Interest at 6% per annum to be allowed purchasers on this sum when settlement is made for invoice representing final shipment.

" Weights:  Gross and net weight and measurements.

" WE REQUIRE written acknowledgment of this order.

" Invoices in triplicate stating the mark above, width of the merchandise, its gross and net weights and also of cardboards, if any.

" A sample of every quality of merchandise must be attached to the invoice.

" When goods of different qualities are packed in the same case, net weights of each must be given separately.

" Assortment must appear on the invoices.

" Invoices which do not contain all these details will be refused."

On the same day defendant's acknowledgment of the receipt of the $1,000 deposit and security provided for in the agreement was received by the following letter:

" New York, *March* 31, 1920.

" Tamargo & Co.,

      " 59 Leonard Street, New York City.

" Gentlemen.— We beg to acknowledge receipt of a check for $1,000.00 together with order for 1,000 pieces of voiles, which order is hereby acknowledged and confirmed.

" The check for $1,000.00 is paid to us in accordance with the terms of said order.

      " Yours very truly,

        " S. SILBERSTEIN & SON,

" GW /HW            by Philip Silberstein."

Furthermore, on the same day, the defendant gave plaintiffs an additional letter as follows:

" New York, *March* 31, 1920.

" Tamargo & Co.,

      " 59 Leonard Street,

          " New York City.

" Gentlemen.— This is to confirm our understanding with respect to the order placed with us today for 1,000 pieces of voile and pursuant therewith, we agree herewith to pay to you a confidential discount of 2% immediately after payment is made for all the merchandise represented by the aforesaid order.

" Thanking you for your courtesy and appreciating your favors, we are,       Yours very truly,

        " S. SILBERSTEIN & SON,

" GR /HW.          By Philip Silberstein."

It appears that one Eustaquio Basanta, of Buenos Aires, Argentine, had negotiated with defendant for the purchase of the merchandise in question, but when the price had been agreed upon defendant required that there should be a deposit of $1,000 in cash and that the order should be signed by an established house. It was pursuant to this agreement that the contract in question was made. The goods had not been delivered when early in May (after the fifth of May, perhaps the sixth or seventh) Basanta called at the defendant's office and inquired whether the voile was ready, to which the clerk answered that by June they would have ready for delivery about 380 pieces. Whereupon Basanta said that he would cancel the order. On either May fifteenth or twentieth, he again called at the office of defendant and was told that they would have a part of the merchandise ready in June,

if he wanted to accept it, to which he replied that he did not want it.    Again on June twenty-second or twenty-third he was told by defendant's clerk that they had ready a part of the voile that they could deliver to him.    Basanta says that he was never asked for shipping instructions for the voile, either verbally or by letter. Joaquin Cortada, one of the plaintiffs, testified that one Rosenstein, defendant's credit man, called upon him between May eighth and fifteenth, and told him that Basanta had been over to his place and told him he would not take the voile, and asked what Cortada was going to do about it, to which Cortada replied that Basanta had said that he had been informed by defendant that the voile would not be ready for several weeks and had told Cortada that he would not take it, so that, naturally, Cortada himself would not take the merchandise from the defendant.    Rosenstein asked Cortada to prevail on Basanta to take the voile, which Cortada promised to try to do, but at the same time he told Rosenstein that he, Cortada, then canceled the order.    Up to this time he admits he had been willing to take the goods.    He denies that he ever agreed to reinstate the order if Basanta finally agreed to accept the merchandise, but says he only promised to think it over.    On June 17, 1920, plaintiffs wrote the following letter to defendant:

Messrs. S. SILBERSTEIN & SON,          " *June 17th,* 1920.
          3–5 Washington Place,
                    " New York City, N. Y.

" GENTLEMEN.— We refer to our order of March 31st, ultimo for 1,000 pieces of printed voile at 50 cents per yard.    Owing to your failure to have complied with the delivery stated in same we hereby cancel said order.    Please hand to bearer your check for the amount which we deposited with you plus interest at 6% per annum from March 31st to date and oblige.

                    " Yours very truly,
                              " TAMARGO & CO.,
" JC /AAT                              per J. CORTADA."

   On July 6, 1920, plaintiffs again wrote defendant as follows:

" Messrs. S. SILBERSTEIN & SONS,          " *July 6th,* 1920.
          5 Washington Place,
                    " New York City, N. Y.

" GENTLEMEN.— We confirm our last letter of June 17th and would ask you to kindly let us have your reply thereto.

   " We await to hear from you per return mail and remain,
                    " Yours very truly,
                              " TAMARGO & CO.,
" AAT /                              per J. CORTADA."

On cross-examination Cortada testified that the failure to comply with the delivery referred to in the letter of June seventeenth was based upon the fact that 500 pieces of the goods should have been delivered on or about May fifth, which were not ready on May fifteenth nor were they ready when this letter was written. He explains the alleged cancellation on May tenth or fifteenth, and the writing of this letter on June seventeeth, by the negotiations that were going on between Rosenstein and Basanta to try to get the latter to accept the goods. He admitted that no shipping instructions for these goods ever had been given to defendant. He acknowledged the receipt from defendant of the following letter:

" NEW YORK, *July* 8*th*, 1920.

" Messrs. TAMARO & Co.,
         " 59 Leonard Street,
             " New York City.

" GENTLEMEN.— We have your favor of July 6th wherein you referred us to your letter of June 17th.

" Inasmuch as there is no failure on our part to comply with delivery specifications stated in the contract made by us on March 31, 1920, and as there exists no justification for the cancellation of this contract by you, we herewith beg to notify you that we refuse to accept cancellation thereof.

" Unless we receive specifications of delivery from you to cover all the goods mentioned in said contract within five days, we shall invoice these goods direct to you and hold you responsible for the full purchase price thereof.

.." We beg to remain,       Yours very truly,
           " S. SILBERSTEIN & SON, INC.
" GHR /HW            by GEO. H. ROSENSTEIN."

For the defendant, Rosenstein denied that he had called on Cortada either on May tenth or fifteenth and swore that he never saw him after the making of the contract on March thirty-first until June seventeenth or eighteenth. He says that he called on Cortada after the receipt of the letter of June seventeenth before set· forth, and inquired what he meant by the letter of cancellation, to which Cortada replied that Basanta would have it so; that they had purchased the goods for Basanta and to get their commission; other than that they had nothing to do with the matter, which would have to be taken up by defendant with Basanta. Rosenstein argued with him and he said he would see Basanta and let Rosenstein hear from him and that afternoon he received a telephone message that they could not do anything with Basanta, so the following day the conversation was resumed with Struckman, another one of the

plaintiffs. The following day the conversations were again resumed with Cortada, during which Basanta entered and he and Cortada had a conversation in private, after which Cortada said that if defendant could satisfy Basanta it would be all right, but nothing further ensued.

The defendant Meyer Silberstein testified that he talked with Cortada in reference to the letter of cancellation of June seventeenth, and that Cortada explained that it was sent because of difficulties that Basanta had gotten into through the fault of Philip Silberstein, who was interested in the defendant corporation; that Philip Silberstein had given information to customers of Basanta in South America that the prices they paid Basanta for the goods were more than actually had been paid and were in excess of the ordinary commission allowed to exporters, and that Basanta felt that in order to get even he would have nothing more to do with the defendant.

Concededly the defendant had not made any deliveries at the time called for by the contract, but it was its contention that under the contract these goods were required to be delivered, rolled, papered and cardboarded in cases of fifty pieces each equally assorted, the cases to be lined with waterproof paper, strong iron straps, for export, and the folding charges, not to exceed $250, were to be paid by the purchasers and that it was further agreed that the packers who were to do this work were to be acceptable to the purchasers. It contended also that plaintiffs had passed on the selection of the packers and knew it would take time to get the goods ready for export shipment, and they could not be delivered alongside steamer for shipment till they were properly packed.

Basanta, however, testified that he had never spoken about the packing with defendant's representatives.

Almost all the testimony sought to be introduced by the defendant as to the requirements in regard to the packing of these goods was excluded by the trial court. But defendant made its position clear that it claimed that these goods had been delivered to a packer agreeable to the purchasers for preparation for shipment pursuant to the terms of the contract, and in corroboration of this theory it offered the following letter, showing that before delivering the goods to the packer it notified the plaintiffs thereof:

                                                          " *May 3d,* 1920.
" TAMARGO & Co.,
          " 59 Leonard St.,
                    " New York City.
    " GENTLEMEN.— We are ready to deliver to Messrs. Hinman & Taylor, the printed voiles you have on order with us but are advised there will be some weeks delay.

" Do you still want these goods sent to these people or to some other packers? We will ship these goods to these people unless we hear from you to the contrary.

"Yours very truly,

"S. SILBERSTEIN & SON

"MS: H                                                              By ——— "

The trial court refused to receive the letter in evidence.

Inasmuch as practically every element in this case was the subject of dispute, except the making of the contract itself and the failure to deliver the goods, this letter had an important bearing on the good faith of the defendant and the existence of an arrangement by which the packers were to be selected subject to the purchasers' approval, and it was reversible error to exclude it. Furthermore, defendant offered in evidence the following letter, the refusal to receive which was reversible error:

"June 15, 1920.

"TAMARGO & Co.,

"59 Leonard St.,

"New York City.

"GENTLEMEN.— We are glad to inform you that the packers have advised us that the printed voiles are almost ready.

"Please arrange shipping space giving us the name of the steamer and pier so that we may inform the packers.

"Yours very truly,

"S. SILBERSTEIN & SON.

"MS: HW.                                                              By ——— "

The letter had a direct bearing upon the question of which of the parties was in default.

Inasmuch as the delivery under the terms of the contract was to be free alongside steamer at the port of New York, it was, of course, the duty of the purchaser to advise the seller of the steamer alongside of which it desired the delivery to be made, as otherwise it would have been impossible for the defendant to comply with the terms of the contract. The exclusion of these two letters seeking to explain the failure to deliver in time requires the reversal of the judgment appealed from.

The respondents now contend that even though the plaintiffs were in default, they are entitled to recover the amount paid because it was given as security for the performance of the contract and as the defendant did not prove any damages the plaintiffs were entitled to the judgment appealed from. In answer to that contention it is sufficient to say that the complaint was framed and the action was tried upon the sole theory of the return of a deposit,

and that no such claim as that now made by the respondents was urged upon the trial, nor was it the basis of recovery thereat. Under the complaint herein this action must be treated as one solely to recover back a deposit, and from that viewpoint it was incumbent upon the plaintiffs to establish performance by them of the terms of the agreement as they had alleged, before they could recover back the $1,000 paid as a deposit thereupon.

The determination and order of the Appellate Term and the judgment of the Municipal Court should, therefore, be reversed and a new trial ordered, with costs to appellant in this court and in the Appellate Term to abide the event.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Determination and judgment reversed and new trial ordered, with costs in this court and in the Appellate Term to abide the event.